O
JS-6

# United States District Court
# Central District of California

| SCOTT, BLANE AND DARREN RECOVERY LLC, | Case № 2:14-cv-03675-ODW(AJWx) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT AUTO-OWNERS INSURANCE COMPANY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [17]** |
| v. | |
| AUTO-OWNERS INSURANCE COMPANY, | |
| Defendant. | |

## I.   INTRODUCTION

This case is the sequel to the Lanham Act litigation that King Tuna, Inc. instituted against its competitor Anova Food, Inc. in 2007.  After King Tuna first filed suit against Anova in the United States District Court for the District of Oregon, Anova tendered the action to its insurer, Defendant Auto-Owners Insurance Company. Auto-Owners rejected the claim, contending that it did not fall within the coerage of the general liability policy.  King Tuna subsequently refiled its suit in this Court. After two trials, the Court awarded Anova over $3.3 million against King Tuna on its counterclaims.

Plaintiff Scott, Blane and Darren Recovery LLC ("SBD"), Anova's successor in interest, now sues Auto-Owners for alleged bad faith in refusing to defend Anova in

the King Tuna litigation.  But since Auto-Owners has absolutely no ties to California, the Court finds that it is not subject to personal jurisdiction in this state.  The Court accordingly **GRANTS** Auto-Owners's Motion to Dismiss for Lack of Personal Jurisdiction and **DENIES AS MOOT** the other bases for the Motion.[1]  (ECF No. 17.)

## II.   FACTUAL BACKGROUND

SBD is a Virginia limited-liability company, which is the successor in interest to Anova Food, Inc.  (Compl. ¶ 1.)  Anova has since discontinued active operations.  (*Id.*)  Auto-Owners is an insurance company with its principal place of business in Michigan.  (*Id.* ¶ 2.)

### 1.   *Auto-Owners issues two insurance policies to Anova*

Anova obtained two general-liability policies from Auto-Owners, which together were in effect between July 8, 2005, and July 8, 2007.  (*Id.* ¶ 10; Exs. 1, 2.)  Anova acquired the policies through Noell Insurance Agency in Tampa, Florida, and Auto-Owners delivered the policies to Anova's headquarters in Riverview, Florida.  (*Id.* ¶ 10.)

The policies' coverage territory included the United States, Puerto Rico, and Canada.  (*Id.* Ex. 1.)  They covered Anova for, among others, "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury.'"  (*Id.* Exs. 1, 2.)  Auto-Owners had "the right and duty to defend any 'suit' seeking those damages."  (*Id.*)  The policies also specified that coverage applied to advertising injury "caused by an offense committed in the course of advertising [the insured's] goods, products or services," subject to several exclusions.  (*Id.*)

### 2.   *King Tuna first files suit; Anova tenders the action*

On July 30, 2007, King Tuna—an Anova competitor—filed suit against Anova in the United States District Court for the District of Oregon alleging claims for false

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

marketing under the Lanham Act, 15 U.S.C. § 1125(a); and Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. § 646.608.  (*Id.* ¶ 11, Ex. 4); *King Tuna, Inc. v. Anova Food, Inc.*, No. 07-6191-TC (D. Or. case filed July 30, 2007).   King Tuna's contentions largely arose out of Anova's claim that it used wood smoke from the Clearsmoke® process, the ingredients used to make its filtered wood smoke, and that the Clearsmoke® products were "generally recognized as safe" by the Food and Drug Administration.  (*Id.* ¶¶ 11–14.)

On August 6 and 10, 2007, Anova's counsel tendered the Oregon action to Auto-Owners.  (*Id.* ¶ 18; Ex. 5.)  On August 22, 2007, Auto-Owners sent a letter from its Clearwater, Florida, office to Anova rejecting the claim.  (*Id.* ¶ 19; Ex. 6.)  SBD contends that Auto-Owners had a duty to defend Anova, arguing that King Tuna's lawsuit arose from an "advertising injury" covered under the policies.  (*Id.* ¶¶ 20–25.)

### 3.     *King Tuna refiles in California and loses*

On November 2, 2007, King Tuna voluntarily dismissed its Oregon action without prejudice.  (Marcus Decl. Ex. B.)  One week later, King Tina filed a nearly identical action in this Court.  *King Tuna, Inc. v. Anova Food, Inc.*, No. 2:07-cv-07451-ODW(AJWx) (C.D. Cal. case filed Nov. 14, 2007); (Compl. Ex. 3.)  The action proceeded to a bench trial at which the Court found against King Tuna.  (Compl. ¶¶ 26–27; Ex. 8.)  The Court later awarded Anova $1,517,019.00 under the Lanham Act and $1,845,522.00 in punitive damages under the Patent False Marketing Act arising out of Anova's counterclaims.  (*Id.* ¶ 28; Ex. 10.)   King Tuna filed for bankruptcy shortly afterwards.  (*Id.* ¶ 30.)

### 4.     *SBD files this action against Auto-Owners*

On May 13, 2014, SBD—asserting rights as Anova's successor in interest—filed this action against Auto-Owners, alleging claims for breach of contract and breach of the insurer's duty of good faith and fair dealing.  (ECF No. 1.)  On July 7, 2014, Auto-Owners moved to dismiss SBD's Complaint for lack of personal jurisdiction and failure to state a claim.  (ECF No. 17.)  Alternatively, Auto-Owners

1   moves to transfer this action to the United States District Court for the Middle District
2   of Florida.  (*Id.*)  SBD timely opposed.  (ECF No. 22.)  That Motion is now before the
3   Court for decision.

4                          **III.   LEGAL STANDARD**

5        A defendant may move to dismiss a case for lack of personal jurisdiction under
6   Federal Rule of Civil Procedure 12(b)(2).  The plaintiff bears the burden of
7   demonstrating that jurisdiction exists.  *Love v. Assoc. Newspapers Ltd.*, 611 F.3d 601,
8   608 (9th Cir. 2010).  But when a district court acts on a defendant's motion to dismiss
9   without holding an evidentiary hearing, the plaintiff must only make a prima facie
10  showing of jurisdictional facts to withstand the motion to dismiss.  *Doe v. Unocal*
11  *Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  Moreover, the court must accept the
12  plaintiff's version of facts as true and must resolve conflicts between the facts in the
13  plaintiff's favor.  *Id.*

14                          **IV.   DISCUSSION**

15       Auto-Owners moves to dismiss SBD's Complaint for lack of personal
16  jurisdiction and failure to state a claim, or, alternatively, to transfer this action to
17  Florida.  Given the current state of Ninth Circuit's personal-jurisdiction law for out-
18  of-state, non-admitted insurance companies, the Court finds that Auto-Owners is not
19  subject to personal jurisdiction in California.

20       The United States Supreme Court has held that district courts must generally
21  assess personal jurisdiction in advance of other issues, such as venue.  *Leroy v. Great*
22  *W. United Corp.*, 443 U.S. 173, 180 (1979).  The Court therefore addresses Auto-
23  Owners's Rule 12(b)(2) Motion first.

24       Federal courts have the power to exercise personal jurisdiction to the extent of
25  the law of the state in which they sit.  Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l,*
26  *L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988).  California's long-arm
27  jurisdictional statute is coextensive with federal due-process requirements.  Cal. Civ.
28  Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

                                         4

The Due Process Clauses of the Fifth and Fourteenth Amendments require that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

Under the "minimum contacts" analysis, a court may obtain either general jurisdiction or specific jurisdiction over a nonresident defendant. *Unocal Corp.*, 248 F.3d at 923. A court has general jurisdiction when the defendant engages in "continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotations marks omitted). For specific jurisdiction, the Ninth Circuit has expounded a three-part test: (1) the defendant must purposefully avail himself of the benefits and protections of the forum state; (2) the claim must arise out of, or be related to, the defendant's forum-based activity; and (3) exercise of jurisdiction must comport with fair play and substantial justice. *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579-80 (9th Cir. 2011); *Schwarzenegger*, 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

The crux of the personal-jurisdiction analysis in this action is purposeful availment.[2] The Supreme Court first expressed this requirement in *Hanson v. Denckla*, 357 U.S. 235 (1958), holding that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253. The Court has continued to refine this prong, recognizing that it serves to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)). While a defendant need not have actually been physically present in the

---

[2] SBD does not argue that Auto-Owners is subject to general jurisdiction.

forum state to be subject to personal jurisdiction there, the defendant still must have "purposefully directed" its commercial efforts at the forum state's residents to satisfy the purposeful-availment prong. *Burger King*, 471 U.S. at 475–76.

Auto-Owners argues that it has not purposefully availed itself of the benefits and protections of California law, because it has no direct connection with California. Auto-Owners contends that since Anova never tendered the California action to it, Auto-Owners never had a chance to evaluate coverage issues and reach a coverage determination under California law.  Auto-Owners also points out that it does not engage in systematic and continuous business in California, as it is not licensed to do business in California, does not sell insurance in the state, and has no California brokers or agents licensed to sell its policies here.  Auto-Owners also does not maintain any office or bank account in California, has never advertised its insurance products for sale in California, and has never sought or received approval from the California Department of Insurance for issuing and delivering its products in California.   Moreover, Auto-Owners does not accept insurance applications in California, does not use a California address, and did not issue the policies at issue in this action in California.

But SBD asserts that under the Ninth Circuit's opinion in *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Company*, 907 F.2d 911 (9th Cir. 1990), Auto-Owners is subject to personal jurisdiction in California.  SBD contends that Auto-Owners meets both prongs of the Ninth Circuit's test expounded in that case: the policies' coverage territory included California, and an insured event—that is, the California action—occurred in the forum state.

While SBD faults Auto-Owners for not citing to *Portage La Prairie*, SBD itself actually misses a later Ninth Circuit case that materially distinguished *Portage La Prairie*.  In *Portage La Prairie*, Portage—a Canadian insurance company—refused to defend the driver in a lawsuit arising out of an automobile accident that occurred in Montana.  907 F.2d at 912.  Farmers Insurance Exchange—the excess insurer—then

stepped in, defended the driver, and paid out to the policy limit. *Id.* Farmers subsequently brought an indemnity action against Portage in the United States District Court for the District of Montana. *Id.* But the district court dismissed the action for lack of personal jurisdiction. *Id.* On appeal, the Ninth Circuit reversed, holding that Portage had purposefully availed itself of Montana because its territorial policy limit included Montana and a covered event occurred in the forum state. *Id.* at 913–14.

Had *Portage La Prairie* been the last word from the Ninth Circuit on foreign-insurance-company personal jurisdiction, the Court would have little problem finding that Auto-Owners is subject to personal jurisdiction in California. But it was not. In *King v. American Family Mutual Insurance Company*, 632 F.3d 570 (9th Cir. 2011), the Court of Appeals specifically distinguished *Portage La Prairie* in a case procedurally analogous to SBD's action. After reciting the three-prong personal-jurisdiction analysis, the court turned to Montana state law. *Id.* at 580. The Ninth Circuit noted that "[u]nder the [purposeful-availment] prong, the Montana Supreme Court has previously considered whether Montana courts have specific personal jurisdiction over an insurer that, like the [defendants at issue], 'has no offices or agents in Montana, does not advertise [t]here, and is not authorized to conduct business in Montana as a foreign insurer.'" *Id.* (quoting *Carter v. Miss. Farm Bureau Cas. Ins. Co.*, 109 P.3d 735, 738 (Mont. 2005)). In *Carter*, the Montana Supreme Court had found that "even though the accident triggering coverage under a nationwide insurance policy took place in Montana, 'there was no basis for a finding of jurisdiction under' the state long-arm statute." *King*, 632 F.3d at 580 (quoting *Carter*, 109 P.3d at 742). The Ninth Circuit accordingly found that the defendant–insurers were not subject to personal jurisdiction in Montana.

Most importantly, the court specifically distinguished *Portage La Prairie*, finding that the decision was "not to the contrary." *King*, 632 F.3d at 580 n.10. The court reasoned,

/ / /

Although we held in *Farmers* that a foreign insurer could be subjected to personal jurisdiction in Montana, *Farmers* was an indemnity dispute.  As a result, *Farmers* was "a case in which a company's insured is sued as a result of a car accident in a foreign state," "arguably [giving rise to] an obligation to appear and defend the driver," while this is a case, like *Carter,* in which "the insured is suing its . . . insurer in a foreign state for breach of contract."

*Id.*  The court therefore made clear that its reasoning in *Portage La Prairie* applies in indemnity actions, while *King* applies in duty-to-defend actions brought by the insured.  Since SBD brings a duty-to-defend suit against Auto-Owners, *King*—not *Portage La Prairie*—applies to determine whether Auto-Owners is subject to personal jurisdiction in California.

Just like the Montana Supreme Court's decision in *Carter*, the California Court of Appeal has repeatedly held that out-of-state insurers with no direct connections with the state are not subject to personal jurisdiction here.  *See, e.g.*, *Elkman v. Nat'l States Ins. Co.*, 173 Cal. App. 4th 1305, 1321 (Ct. App. 2009) (holding that merely accepting premium payments from California residents was not sufficient to subject the insurer to personal jurisdiction); *HealthMarkets, Inc. v. Super. Ct.*, 171 Cal. App. 4th 1160, 1173 (Ct. App. 2009) (finding no personal jurisdiction over an out-of-state insurance company that had no California-based contacts); *Penn. Health & Life Ins. Guar. Ass'n v. Super. Ct.*, 22 Cal. App. 4th 477, 484 (Ct. App. 1994) (concluding that a guarantor–insurer was not subject to personal jurisdiction in California, because it "had no involvement in soliciting or issuing the policy, did not enter into a contract with a California resident and did not seek to profit from or engage in any economic activity in California"); *In re Marriage of Martin*, 207 Cal. App. 3d 1426, 1437 (Ct. App. 1989) (reviewing the defendant–insurer's complete lack of contacts with California and finding no basis for exercising personal jurisdiction).

/ / /

1        Auto-Owners easily falls within these California appellate decisions precluding

2   the exercise of personal jurisdiction.  Auto-Owners has absolutely no connection with

3   California.   It is not licensed to do business, does not sell insurance, and has no

4   brokers or agents in California.  It does not maintain any offices, bank accounts, or

5   employees in the state.   Auto-Owners does not accept insurance applications in

6   California, and never accepted, processed, reviewed, or denied any policy or tender

7   relevant to this action in California.  Auto-Owners contacts with California are not

8   even "attenuated"—they are quite simply nonexistent.  The Court has no colorable

9   legal basis for subjecting the company to jurisdiction here in light of *King* and the

10  Supreme Court's extensive purposeful-availment case law.  *Cf. McGee v. Int'l Life*

11  *Ins. Co.*, 355 U.S. 220, 223 (1957) (finding that an out-of-state insurer was subject to

12  personal jurisdiction in California because the contract was delivered in California, the

13  premiums were mailed from the state, and the insured was a California resident);

14  *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th

15  Cir. 1986) (finding personal jurisdiction over a Cayman Islands insurance company

16  because the insurance fund was created for California residents' benefit); *Hirsch v.*

17  *Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1480 (9th Cir. 1986) (subjecting

18  an insurer to personal jurisdiction in California because it provided healthcare

19  coverage for California employees and accepted premiums paid by California

20  residents).

21       Contrary to SBD's argument, the District Court for the District of Hawaii's

22  decision in *Robinson Corp. v. Auto-Owners Insurance Company*, 304 F. Supp. 2d

23  1232 (D. Haw. 2003), does not change this result.  In that case, the court found that

24  Auto-Owners was subject to personal jurisdiction in Hawaii after applying the Ninth

25  Circuit's *Portage La Prairie* personal-jurisdiction rubric.   *Id.* at 1238.   But

26  importantly, the district court decided *Robinson* prior to the Ninth Circuit's decision in

27  *King* distinguishing *Portage La Prairie*.  Since *Robinson* was a bad-faith duty-to-

28  / / /

defend action just like *King*, the purposeful-availment holding in *Robinson* is of doubtful continued viability.

Since the Court finds that Auto-Owners has not purposefully availed itself of the benefits and protections of California, the Court cannot exercise personal jurisdiction over it.  *See Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.").

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Auto-Owners's Motion to Dismiss for lack of personal jurisdiction and **DENIES AS MOOT** Auto-Owners's remaining bases for dismissal.  (ECF No. 17.)  The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

August 27, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**